UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY HAWKINS,

    Plaintiff,

Case No. 08-13874

v.

Honorable Paul D. Borman
United States District Judge

GENESYS HEALTH SYSTEMS,
CENTER FOR GERONTOLOGY, GENESYS
AMBULATORY HEALTH & HOSPICE, INC.,
ELDER ABUSE AND EXPLOITATION PREVENTION,
and ASCENSION HEALTH.

_____/

OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL
RECONSIDERATION OF OPINION AND ORDER DENYING IN PART AND GRANTING
IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On April 2, 2010, Defendants filed a motion for partial reconsideration of the Court's March 24, 2010 Opinion and Order Denying in Part and Granting in Part Defendants' Motion for Summary Judgment (Dkt. No. 29.) For the reasons that follow, the Court DENIES Defendants' Motion for Partial Reconsideration.

I.    BACKGROUND

In its March 24, 2010 Order, this Court denied in part and granted in part Defendants' Motion for Summary Judgment. The Court concluded in part that Plaintiff had presented sufficient evidence to survive summary judgment on her claim that Defendants violated the Michigan Persons With Disabilities Civil Rights Act, MCL 37.1101 *et seq.* ("PWDCRA"). The Court concluded that, viewing the facts in the light most favorable to the Plaintiff, she had presented evidence to create

1

a genuine issue of material fact as to whether she was disabled, as that term is defined under the PWDCRA, whether her disability was unrelated to her ability to perform the functions of her job and whether she had been discriminated against in one of the ways set forth in the PWDCRA.

Defendants now ask this Court to reconsider its conclusion that there exists a question of fact regarding whether Plaintiff was regarded as disabled under the PWDCRA. Defendants argue (1) that the Court made assumptions about Defendants' perceptions of Plaintiff's disability that were not supported by the record and (2) that the Court did not draw any conclusions, or rely on any evidence presented by Plaintiff, on the issue of whether Defendants regarded Plaintiff's condition as unrelated to her ability to perform her job.

## II.    STANDARD OF REVIEW

Motions for reconsideration are governed by E.D. Mich. LR 7.1(h)(3), which states in pertinent part:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. L.R. 7.1(h)(3). "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Ososki v. St. Paul Surplus Lines Ins. Co.*, 162 F. Supp.2d 714, 718 (E.D. Mich.2001).

## III.   ANALYSIS

### A.    Evidence of Defendants' Perceptions of Plaintiff's Condition

Defendants first contend that there is no evidence to support the fact that Defendants had knowledge of Plaintiff's underlying condition of rheumatoid arthritis and of the physical

manifestations of the disease, such as broken bones. This is not true. Plaintiff testified in her deposition as follows:

> Q: Other than the conversations you've testified to about talking to Ms. Nims, did you ever discuss your physical condition with her?
>
> A: What physical condition would that be?
>
> Q: Your legs in particular.
>
> \*     \*     \*
>
> A: You mean did she know that I had . . . the broken bone? . . . She knew about my arthritis. There was never a secret.
>
> \*     \*     \*
>
> Q: Do you know who was involved in the decision to [terminate you]?
>
> A: Well, I know for a fact that Melissa Bentley had said some things about my condition and probably perceived me to be a liability, I assume that Amy Gawthrop was involved in that decision and I know that Diane was.
>
> Q: Now, you said Miss Bentley said something about your condition. What did she say?
>
> A: I know she told Diane things about my prior fall because Diane knew things that I never told her.
>
> Q: Why do you assume it was Miss Bentley?
>
> A: Because Miss Bentley is the only one that would have known about it, unless somebody else got into my medical records.
>
> Q: But you don't know specifically what Miss Bentley ever said to Miss Nims?
>
> A: Other than my personal medical information, no.
>
> \*     \*     \*

(Pl.'s Resp. Mot. Summ. Judg. Ex. A, Deposition of Amy Hawkins, July 8, 2009, 231-232, 237.)

Defendants' assertion in their motion for reconsideration that there is no evidence that Defendants were even aware of Plaintiff's prior injury is directly contradicted by this testimony. Thus, the Court did not assume that Ms. Nims or Defendants' human resources department had knowledge of Plaintiff's "condition" and prior fractures. Plaintiff specifically stated in her deposition that Defendants had such knowledge. That Defendants chose not to investigate or dispute this allegation through discovery does not defeat Plaintiff's factual testimony on this issue.

3

Defendants assert in their motion for reconsideration that Plaintiff's comment that she had been told that she had "opened up a can of worms" by calling human resources and alerting them to the second fracture "was nothing but speculation." (Defs.'s Mot. 4 n.2.) However, when viewed in light of Plaintiff's testimony quoted above, this comment makes perfect sense. Based on this testimony, a jury could reasonably infer that when a human resources employee, who was privy to Plaintiff's prior medical history, learned that Plaintiff had broken her leg again, Defendants began to view Plaintiff as a liability or an "inconvenience" and decided to terminate her employment. (Pl.'s Mot. Ex. A, Hawkins Dep. 234.) Taking the facts in the light most favorable to the Plaintiff, which the Court is obligated to do on a motion for summary judgment, the Court concludes that Plaintiff has created a genuine issue of fact as to whether Defendants were aware of Plaintiff's underlying condition and of the physical manifestations of that condition, such as broken bones.

**B.      Evidence That Plaintiff's Condition Was Unrelated to Her Ability to Perform Her Job**

Defendants next contend that Plaintiff presented no evidence that her susceptibility to spontaneous fractures was regarded as unrelated to her job. Again, record testimony supports the Court's conclusion that Plaintiff's condition, her rheumatoid arthritis, was not regarded by her employer as related to her ability to perform her job. Ms. Nims testified that Plaintiff's "disability was her chronic rheumatoid arthritis, but she was able to get around on that without crutches." (Defs.'s Mot. Summ. Judg. Ex. 3, Deposition of Diane Nims, September 10, 2009, 111.) While Defendants would urge the Court to focus not on Plaintiff's underlying condition but on the symptoms of that condition, Plaintiff frames a different theory focusing on Defendants' perception of Plaintiff's overall condition as rendering her a "liability" to the Defendants. In her regarded as claim, Plaintiff alleges that Defendants regarded her rheumatoid arthritis as substantially limiting

4

her ability to walk - this is the heart of her claim. The evidence supports the contention that Defendants perceived Plaintiff's rheumatoid arthritis, which they regarded as a disability, as unrelated to her ability to perform her job.

Even were the Court were to focus instead, as Defendants urge the Court to do, on the symptom, and on Defendants' perception of Plaintiff's ability to perform her job while manifesting that symptom at the time of her termination, Plaintiff has created a question of fact as to whether Ms. Nims actually regarded that condition as unrelated to Plaintiff's ability to perform her job. Plaintiff testified that she was fully capable of performing the essential functions of her job at the time she was terminated, and testified that Ms. Nims knew that Plaintiff was capable of performing her job, despite Ms. Nims' statements to the contrary:

> Q: Do you think that Ms. Nims thought that you could do your job when you were - after your injury in June of '08?
> A: I think that she perceived me to be a liability, but I know she knew I could do my job because she waited two months to even start the job.
>
> \*      \*      \*
>
> Q: Other than what you have testified to here today, do you have any reason to believe that you were terminated because you were disabled?
> A: I was never disabled.
> Q: So you're not disabled. You were not disabled then.
> A: No. I could do the essential functions of my job. I had always done the essential functions of my job.

(Pl.'s Resp. Mot. Summ. Judg. Ex. A, Hawkins Dep. 234, 236-237.) As the Court noted in its earlier Opinion, Plaintiff testified that she was fully capable of carrying the necessary items for her job while using crutches, and that she had done so on previous occasions. (Opinion and Order dated March 24, 2010, p. 5.) Plaintiff strongly disputes Ms. Nims' alleged perception that Plaintiff was unable to perform the essential functions of her job at all relevant times, and also asserts that Ms.

Nims knew that Plaintiff was fully capable of doing so at all times. The Court concludes that Plaintiff has presented a genuine issue of material fact as to whether Defendants perceived Plaintiff's condition, or her symptoms, as unrelated to her ability to perform the duties of her job.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion for Partial Reconsideration of Opinion and Order Denying in Part and Granting in Part Defendants' Motion for Summary Judgment (Dkt. No. 29.)

IT IS SO ORDERED.

s/Paul D. Borman
**PAUL D. BORMAN**
**UNITED STATES DISTRICT JUDGE**

Dated: April 14, 2010

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 14, 2010.

s/Denise Goodine
Case Manager